### In re MANHATTAN TERMINAL OF THE NEW YORK AND BROOKLYN BRIDGE.

(Supreme Court, Special Term, New York County. December 22, 1909.)

1. EMINENT DOMAIN (§ 236*)—COMPENSATION—ASSESSMENT BY COMMISSIONERS—RECOMMITMENT OF REPORT.

Though in condemnation proceedings the court has power to return the awards to the commissioners for specification of the items entered in the awards, it should not be done unless it appears that there is probable cause that the commissioners have made a material error, which neither their report nor their minutes disclose.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 602; Dec. Dig. § 236.*]

2. EMINENT DOMAIN (§ 134*)—COMPENSATION—VALUE FOR SPECIAL USE.

Where premises condemned by the city were used for a saloon and were leased for a long term, an award in proportion to their large rental value because of location near the entrance of a bridge is not excessive, on the ground that the city is not obliged to maintain the entrance at that place and a change of entrance would decrease the value, where the testimony as to the value of the unexpired term is undisputed, and if the tenant remains in possession it is presumed the city will collect the rent reserved.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 356; Dec. Dig. § 134.*]

3. EVIDENCE (§ 571*)—OPINION EVIDENCE—VALUE—WEIGHT.

In assessing the value of premises taken by condemnation, the commissioners are not bound by the opinion of experts.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2397; Dec. Dig. § 571.*]

4. EMINENT DOMAIN (§ 236*)—COMPENSATION—ELEMENTS OF VALUE—RECOMMITTAL OF REPORT:

The mere failure to take plottage into consideration in fixing compensation for property taken does not require the report of commissioners to be referred back, as plottage alone does not necessarily have value in every case.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 602; Dec. Dig. § 236.*]

5. EVIDENCE (§ 142*)—COMPENSATION—MATTERS TO BE CONSIDERED.

In fixing the compensation for land taken in condemnation proceedings, the price for which adjoining property recently sold may be considered.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423; Dec. Dig. § 142.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Condemnation proceedings by the City of New York to acquire title to real estate for the construction of an extension of the Manhattan Terminal of the New York and Brooklyn Bridge. Heard on motion to confirm the commissioners' report. Motion granted.

See, also, 127 App. Div. 925, 111 N. Y. Supp. 1129.

Hitchings & Palliser, for East River Savings Institution (Damage Parcel No. 21).

Albert H. Hager, for William H. Lynn (Damage Parcel No. 7).

Straley & Hasbrouck, for executors (Damage Parcel No. 22).

Harry G. Smith, for William L. Van Nest and others (Damage Parcel No. 29).

A. S. & W. Hutchins, for executors of the estate of Maria L. Groves, deceased (Damage Parcel No. 17).

Bowers & Sands, for Clara R. Gerken (Damage Parcel No. 16).

Michael J. Mulqueen, for owners of Damage Parcel No. 28.

Thomas L. Feitner, for J. Searle Barclay and another, claimants to Parcel No. 10.

William J. Underwood, for E. Matilda Ziegler, William J. Gaynor, and William S. Champ, as executors of the trustees under the last will and testament of William Ziegler deceased (Damage Parcel No. 23).

Wells & Snedeker, for M. E. Jackson and another (Damage Parcels Nos. 18 and 22).

Greene & Hurd, for property owners in Damage Parcel No. 25.

Morgan J. O'Brien, for owner of Damage Parcel No. 8.

Alexander & Green, for Equitable Life Assurance Society of United States.

Whalen & Dunn, for estate of Rachel Barnard, deceased (Damage Parcel No. 24).

Edward W. Murphy, for claimant, St. Andrews Church (Damage Parcel No. 32).

De Witt, Lockman & De Witt, for George G. De Witt and others, executors, etc. (Damage Parcel No. 19).

Pace, Stimpson & Arroyo, for William E. Sutherland, claimant under Damage Parcel No. 31.

Wilder, Ewen & Patterson, for Russell Estate, claimant (Damage Parcel No. 27).

Joseph A. Flannery, for Frances J. Storms, owner of Damage Parcels Nos. 2 and 11 and lessee to Parcel No. 3.

Lewis O. Van Doren, for Harry C. Hart, claimant (Damage Parcels Nos. 2 and 3).

Philbin, Beekman & Menken, for Acre Realty Company, assignee of Elizabeth Lyon, owner of Parcel No. 15 at the time the city took title

Francis K. Pendleton, Corp. Counsel, and Charles D. Olendorf, Asst. Corp. Counsel.

DAYTON, J. Motion to confirm report of commissioners, dated July 9, 1909, filed July 19, 1909, made by certain owners on notice and by publication in the City Record to all parties in interest; the city having failed to make such motion. The minutes of the hearing on the return day, November 4, 1909, show that all questions raised were

deemed properly before the court for adjudication upon the entire re-
port as to damage parcels 2 to 32, inclusive, involving awards aggre-
gating about $3,000,000.  The owners complain of the "law's delay,"
nearly three years, from which they have suffered by being deprived
of the use and income of their property or its proceeds—an evil or
penalty which might be spared in the future by the adoption of simpler
and speedier methods for forcibly taking the lands of the citizen for
public purposes.  This comment is not a reflection upon these commis-
sioners nor upon counsel. · The fault lies in the cumbersome and costly
existing procedure.  The remedy lies in suitable and careful legisla-
tion on this important subject.  The corporation counsel opposed the
awards to damage parcels 2, 3, 4, 5, 7, 8, 15, 17, 18, 21, 22, 25, 27, 28,
29, 31, and 32.  He moved on the argument to confirm as to damage
parcel 19.  An order by consent was granted directing payments to
certain mortgagees and also to the owners of damage parcels 9, 10, 11,
12, 13, 14, 16, 20, 23, 24, and 30.  By arrangement between counsel
time to exchange and submit briefs was named.  On December 16,
1909, briefs, replies, and sur-replies were finally submitted.

It is elaborately urged by the corporation counsel that the awards
to which he objects are "palpably excessive, unjust, and against the
weight of evidence."  Not a few of the owners protest that their
awards are insufficient.  A condensed statement as to some of these
parcels may serve to indicate the propriety of the awards made for
all the parcels in controversy.  The valuations referred to are the low-
est testified by the respective experts.  Damage parcels 4, 5, 17, 18,
and 22—premises No. 80 Park Row, area 2,387 square feet: Owner's
expert, $262,790 without the building; city's expert, $100,000 for land
and $10,000 for building; final award, $174,230.  No. 82 Park Row,
same area: Owner's expert, $238,700 without the building; city's
expert, $100,000 for land, $2,500 for building; final award, $167,090.
No. 15 Chambers street, area 809 square feet: Owner's expert, $133,-
485; city's expert, $70,765; preliminary award, $93,035; final award,
$86,017.  No. 1 Chambers street, area 2,105 square feet: Owner's ex-
pert, $294,700; city's expert, $168,400; preliminary award, $235,000;
final award, $217,375.  Nos. 11 and 13 Chambers street, area 6,007
square feet: Owner's expert, $750,875; city's expert, $363,423; pre-
liminary award, $495,525; final award, $458,360.  It appeared that
about 1903 these properties sold for less than the awards.  The city's
experts seem to have limited their increase in value between 1903 and
1907 to about 10 per cent.  Damage parcel 19, area 2,363 square feet,
frontage 24 feet on Chambers street and 27.66 feet on Reade street:
Owner's expert, land $189,040, building $10,960; total, $200,000;
city's expert, land $108,098, building $12,000; total, $120,698; award,
$146,608.

The owners insist that the report be sent back for revision and cor-
rection for inequality and inconsistency of awards, and that the com-
missioners be compelled to state the principles according to which the
award for this and other parcels in the said block were made, with
items for allowances for the land and buildings taken.  Counsel for
the owners claim that on their final estimate the commissioners arbi-

trarily reduced their awards 7½ per cent. on five of the six parcels in that block, leaving parcel 21 at the preliminary estimate. This made a difference against parcel 19 of about $12,000. Parcel 21 had been recently improved by the erection of an expensive building for banking purposes. Testimony was given as to the value of the building on parcel 19. The award was for "land and improvements." The court may have power to return the awards for specification of the items entering into the awards; yet, as was said in 25 App. Div. 22, 49 N. Y. Supp. 319, Board of Water Com'rs v. Shutts:

"Such a course should not be taken unless it is made to appear that there is probable cause to believe that the commissioners have made a material error which neither their report nor their minutes disclose."

From In re New St., 63 Misc. Rep, 495, 117 N. Y. Supp. 409 it may be inferred that extreme instances required revision as to certain parcels. No suggestion of additional evidence is here proposed. No change in the awards, on this record, can be predicated upon what would practically be a reargument.

Damage parcel 15: These premises contained an area of 1,784 square feet, upon which was a three-story brick building used for a liquor saloon, bringing a yearly rental of $15,500 under a lease having an unexpired term of about 13 years from the time the city took possession December 24, 1906, with rentals $16,500 from July 1, 1909, to July 1, 1914, and $17,500 for the next five years. Owner's expert, $639,400; city's expert, $190,400; award, $261,760, out of which $36,100 is to be deducted as compensation to the lessee. The corporation counsel urges that this extraordinarily large rental was paid because the property was located near the entrance of the bridge, but that there was no obligation on the part of the city to maintain that entrance, and that a change thereof would decrease largely the rental value, and therefore undue weight was given to the "temporary rental obtained for this property." Might the commissioners indulge in the happening that the entrance to the bridge would be changed by the city during the terms of the lease in a proceeding other than this? Testimony as to the value of this unexpired term was uncontradicted by the owners. They claim, however, that as the lessee remained in possession until the award was made, and may contingently continue in possession until the expiration of his lease, the allowance to him is excessive. If he has so remained in possession, the presumption is that the city is collecting the rent reserved in the lease. At all events, his lease is destroyed by this proceeding. On the record the allowance to him was not excessive.

Damage parcel 31: Nos. 29, 31, and 33 Park street, area 6,545 square feet, frontage nearly 76 feet; two seven-story brick tenements, with stores on ground floor; on the rear was a four-story tenement; owner's expert, $401,835, land without buildings; city's expert, $212,260, including $29,000 for buildings; award, 279,975. The corporation counsel urged that the amount awarded was $75,975 more than this property sold for in 1904, and was therefore excessive. The voluminous testimony as to this parcel was given in 1907. The manifold reasons stated by the respective experts were doubtless considered by

the commissioners, though not bound by such opinions. Unless the integrity or qualifications of commissioners be successfully attacked, or unless it appears affirmatively that they proceeded upon an erroneous theory, their judgment of values is controlling. No such attack has been made, nor does the record disclose that their conclusions are based upon an erroneous theory.

Damage parcel 27: Nos. 46 and 48 Centre street, area 2,777 square feet; owner's expert, $194,390 for land, $15,610 for buildings, total $210,000; city's expert, $88,864 for land, $20,000 for buildings, total $108,804; award $135,181. The city claims that the award shows $9 more per square foot than it paid for the adjoining damage parcel 26, which contained only 943 square feet, or about two-thirds less in area with a four-story brick building, whereas parcel 27 had upon it five-story brick buildings. The testimony was that, but for the prospective possession by the city, the rental value would be $15,000 per annum. The owners urge that the report be referred back on the ground that "plottage" was not allowed. Mr. Justice Bischoff, in Re Fifteenth and Eighteenth Streets, 56 Misc. Rep. 306, 107 N. Y. Supp. 567, said:

"There is no rule of law that plottage, taken alone, must have a value in every case."

I cannot hold on the record here that error in this respect was committed. Furthermore, damage parcel 4 was sold at private sale in June, 1903, for $85,000, but the award, $174,230, was subject to a mortgage of $93,480 (paid by order of this court on consent of the city entered in this proceeding November 9, 1909), so that as a loaning proposition these premises increased considerably between 1903 and December 24, 1906.

Damage parcel 22 was sold in May, 1903, for $150,000, subject to a mortgage of $107,429 (paid by consent of the city); award, $217,-375. This increase of $67,000 is not out of proportion to that shown in other damage parcels. Furthermore, it would seem that by its purchase of the Staats Zeitung property at the rate of about $208 per square foot for the land, and $450,000 for buildings and machinery, the city forefends its argument that sales of contiguous and neighboring properties at from $11 to about $90 per square foot prior to December 24, 1906, must govern, for the reason that, allowing for the advantageous situation of that 5,770 square feet, for which presumably it paid the fair market value, the great disparity between that price and the values now claimed by the city for the concomitant lands taken here is irreconcilable with probabilities. The commissioners could not but seriously consider that purchase as an element in forming their judgment of the relative values of the remaining parcels condemned.

Upon damage parcel 3 there was a claim made by Henry C. Hart as lessee. The testimony is that the "cigar stand and appurtenances" in Leggett's Hotel, described in the "lease" to Mr. Hart, comprised a window space on Park Row, with Mr. Hart's name thereon; also store fixtures situated on the ground floor at the entrance of the hotel. These defined premises, part of 76 and 78 Park Row, were in written terms granted and demised by Alfred Storms to Mr. Hart for 10 years

from May 1, 1901, at the yearly rent of $900, payable monthly in advance. That instrument was recorded April 27, 1901. True, it was a sublease from a lessee of the city; but after the death of Alfred. Storms Mr. Hart continued to pay the rent to the successors in interest of Mr. Storms. In further recognition of this lease there is evidence to the effect that in the spring of 1906 A. Rae Storms and Hart, after discussion, agreed in writing on $15,000 for the balance of the term in the event of a sale of the property to a proposed syndicate. Another circumstance is that, when Mrs. Storms dispossessed A. Rae Storms, she did not include Hart in those proceedings, and thereafter received rent from him, as provided in the lease. The commissioners awarded $27,500 to Mrs. Storms' lessee from the city, and "carved out" of that sum $2,500 for Mr. Hart. On further hearing they struck out that $2,500, apparently holding that the lease became void at the death of Alfred Storms. The instrument does not say so. The successors in interest of Alfred Storms, by their significant acts, continued to regard the lease as existing to the time when the city took possession. This conduct shows an intention to ratify it. Any other view would work injustice. Mr. Hart claims that at least $4,000 should have been allowed to him for the unexpired term of between 4 and 5 years. The testimony tended to support that sum. While of opinion that the commissioners erred, as matter of law, in deciding that Mr. Hart did not hold a lease, I am not prepared to say that they erred in fixing his damage at $2,500. The evidence shows that he was conducting a profitable business; but, unfortunately for him, he is without redress beyond this amount.

Certain owners contend that the commissioners erred in not computing and including interest upon the awards, from the date of vesting title in the city to the date of their report, as compensation. The Court of Appeals, October 18, 1909, in Re Mott Haven Canal Docks, 89 N. E. 474, held that interest from the time of vesting title to report (vide sections 990 and 1001, Greater New York Charter) should have been allowed; adding: "This scheme seems necessarily to involve compound interest from the date of the commissioners' report"—and distinguishes Re Dorsett, 179 N. Y. 496, 72 N. E. 522, as a decision under a special statute. The corporation counsel urges that the proceeding at bar is under chapter 21 of the Greater New York Charter (Laws 1901, p. 607, c. 466), as amended by section 1439 of that chapter, which provides that upon the vesting of title interest at the legal rate shall be paid upon awards made from the date of vesting of title to the date of payment, while section 990 of the charter applies to street openings and dock proceedings, and expressly directs the allowance of interest from the date of vesting title in the city to the date of the report. The property owners insist that by a proper construction of statutes, sustained by authority, this proceeding is controlled by title 4, chapter 17, of the charter. I do not pass upon the anomaly presented, for the reason that, as upon the argument the representative of the corporation counsel announced that compound interest would not be paid by the city in this proceeding, unless specifically sanctioned by the Court of Appeals, the owners are confronted with further "law's delay," which should, if possible, be avoided.

Concluding from a record evidencing careful deliberation that the awards are not palpably excessive, and that no erroneous theory has been followed, the report of the commissioners as to their awards for damage parcels 2, 3, 4, 5, 7, 8, 15, 17, 18, 19, 21, 22, 25, 27, 28, 29, 31, and 32 is confirmed, with interest thereon, respectively, from December 24, 1906, to date of payment, as are also their allowances to Henry C. Hart, lessee, $2,500, with like interest, out of the award, when paid, for parcel 3; to Lewis Johnston, lessee, $1,400, with like interest, out of the award, when paid, for parcel 11; to Charles Furthman, lessee, $36,160, with like interest, out of the award, when paid, for parcel 15; to Peter H. Henckel, lessee, $100, with like interest, out of the award, when paid, for parcel 28; and to Nicola Yuzzolino, with like interest, out of the award, when paid, for parcel 31.

Settle order on notice.